UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

JOHN PETRI,                                             07  CIV 6142

        Plaintiff,
                                                              (JGK)
- against -
                                                         ECF Case
SHEET METAL WORKERS NATIONAL PENSION
FUND, and THE BOARD OF TRUSTEES OF THE
SHEET METAL WORKERS NATIONAL PENSION
FUND, As Administrator of the Pension Plan of the
SHEET METAL WORKERS NATIONAL PENSION
FUND;

        Defendant.
_____x


# COMPLAINT


QUESADA & MOORE, LLP
By: Victoria Quesada (VQ 2392)
128 Avon Place
West Hempstead, NY 11552
(516) 486-7307

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――x

JOHN PETRI,

               Plaintiff,

  - against -

SHEET METAL WORKERS NATIONAL PENSION
FUND, and THE BOARD OF TRUSTEES OF THE
SHEET METAL WORKERS NATIONAL PENSION
FUND, As Administrator of the Pension Plan of the
SHEET METAL WORKERS NATIONAL PENSION
FUND;

               Defendant.
―――――――――――――――――――――――――x

## **PRELIMINARY STATEMENT**

1. Plaintiff John Petri, a vested participant in the Pension Plan of the Sheet Metal Workers Pension Fund brings this action individually and on behalf of those similarly situated, pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), to make a claim for benefits, to obtain appropriate equitable relief to redress violations of ERISA in the terms of the Plan and/or the Trustees' practices and for declaratory relief. Mr. Petri seeks reformation of the terms of the Plan and the Trustees' practices.

## JURISDICTION AND VENUE

2. Jurisdiction is based on

    (a) ERISA Section 502(e)(1), 29 USC § 1132(e)(1);

    (b) 28 USC § 1331(a), because this action arises under the laws of the United States, namely ERISA.

3. Declaratory and injunctive relief are authorized by 28 USC §§ 2201 and 2202, respectively, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by ERISA Section 502(a)(3), 29 USC §§ 1132(a)(3).

4. Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District.

## THE PARTIES

**Plaintiff**

5. Plaintiff John Petri is a participant, within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7), in the Pension Plan of Defendant Sheet Metal Workers National Pension Fund. He resides in this District at 53 Hartsdale Road, Elmsford, New York 10523-3716.

**Defendants**

6. The Pension Plan of Defendant Sheet Metal Workers National Pension Fund (the "Plan") is an "employee pension benefit plan" within the meaning of ERISA Section

3

3(2)(A), 29 USC § 1002(2)(A), and, more precisely, a "multiemployer plan" within the meaning of ERISA Section 3(37)(A), 29 USC § 1002(37)(A). Its purpose is to provide retirement income to participants in the Plan. Its offices are located at 601 N. Fairfax Street, Suite 500, Alexandria, VA 22314.

7. Defendant Board of Trustees of the Sheet Metal Workers National Pension Fund (the "Board of Trustees"), is the "Administrator" of the Plan, within the meaning of ERISA Section 3(16)(A), 29 USC § 1002(16)(A), and a Plan "fiduciary", within the meaning of ERISA Section 3(21)(A), 29 USC § 1002(21)(A). The members of the Board of Trustees are the named fiduciaries of a Trust Fund established as the result of collective bargaining agreements between the Employers contributing to the Fund and the Local Unions, for the purpose of paying the pension benefits provided under the Plan. The Board of Trustees' offices are also located at 601 N. Fairfax Street, Suite 500, Alexandria, VA 22314.

## FACTS

8. Plaintiff Petri worked for contributing employers and earned approximately 24.9 years of credited service, prior to 1988, entitling him to a pension benefit from the Plan.

9. On or about 2002, Plaintiff Petri retired and commenced receiving a benefit from the Plan.

10. On or about June 5, 2005, Plaintiff Petri received a notification from the Plan

requesting Plaintiff Petri to complete a Social Security earning release form.

    11.   Plaintiff Petri completed the form and returned it to the Plan.

    12.   On September 12, 2006, Plaintiff Petri received a letter from the Plan advising him that:

> The Fund Office has recently verified that you have been employed with Sheet Metal Master after your Effective Date. Your employment with this company meets the Plan's definition of Disqualifying Employment found in Section 8.06(d) as it is the same or related business as the Plan's contributing Employers. This letter is to serve as notice that your Early Retirement Pension, which was effective April 2002, is terminated.
>
> Additionally, we have determined that you have been affiliated with this company while receiving benefits with the Fund since 2002. As a result, you were never deemed "retired" as required under Section 5.01 of the Plan and the Fund expects reimbursement of all pension payments received since 2002-totaling $76,194.
>
> Please be advised that you continue to qualify for benefits and will be provided an opportunity to elect a pension, once you cease work in Disqualifying Employment-however, the Fund will offset future benefits if the overpayment has not been reimbursed.

    13.   The September 12, 2006 letter advised Plaintiff Petri that he had 180 days to "appeal this decision to the Appeals Committee of the Fund's Board of Trustees".

    14.   The Plan did not supply Plaintiff Petri with the Social Security earnings information upon which they had based their decision.

    15.   By letter dated February 5, 2007, Plaintiff Petri appealed the decision and told the Plan that Sheet Metal Master, Inc had begun in the year 1986 and ceased all operations in 2005. In 2001, with thought of retirement, "the business was kept open only for purposes of health insurance". He stated that the income for the years 2001,

2002, and 2003 (which was $9,000, $9,600, and $18,000 respectively) came from "repayment of officer loans from previous years, from sales of equipment and inventory and was taken as officer salaries to meet health insurance purposes". The income for the years 2003 and 2004 (which was $35,768 and $26,000 respectively) came from "a few small remodeling jobs for friends". I

    16.  By letter dated March 13, 2007, the Plan replied and told Plaintiff Petri that their previous statement was an "error": "[t]o clarify based on your earnings to the U.S. Social Security Administration, you were employed with Johns Metal Workers, Inc." The Plan still failed to provide Plaintiff Petri with the Social Security earnings information upon which they were basing their decision.

    17.  Plaintiff Petri advised the Plan that Johns Metal Workers, Inc. commenced operations on or about the year 2005 and was involved in residential roofing, siding and alterations.   It is licensed in Westchester County as a home improvement contractor.

    18.  On March 13, 2007, the Plan advised Plaintiff Petri that according the Dun and Bradstreet, Johns Metal Workers, Inc. is a roofing/siding contractor, a fact which plaintiff had already conceded in his March 5, 2007 letter.

    19.  The Plan claimed that roofing work is Disqualifying Employment under the Plan.  The Plan stated roofing " is claimed as work in the Sheet Metal Industry as defined in the Sheet Metal Workers' International Association Constitution Article One Section 5(y)".

20. Based upon the foregoing, the Appeals Committee denied Plaintiff Petri's appeal and found that he was engaged in Disqualifying Employment for the years 2002, 2003, 2004 and 2005, although the only year for which roofing was established was the year 2005 when Petri worked for Johns Metal Workers, Inc.

21. The Appeals Committee further claimed that "Sheet Metal Master had been a Contributing Employer with the Fund".

22. Starting in approximately 1986, Petri became an employer-employee Contributing Employer, a position for independent contractors who wish to sign with the Union.   However, according to the Local's rules, employer-employee Contributing Employers do not contribute to the pension plan but only the health and welfare plans. Employer-employees do not earn pension credit.

23. Sheet Metal Master was no longer a Contributing Employer during the years in question: 2002, 2003, 2004 and 2005.

24. The Appeals Committee also advised Plaintiff Petri that he only had 91 days "after the claim is denied by the Appeals Committee" to bring an action under Section 502(a) of ERISA to bring a suit to challenge this determination.  The Appeals Committee did not provide a copy of any provision of the Plan which so drastically narrowed the statute of limitations applicable to benefit claims and fiduciary breaches under ERISA. The Appeals Committee only provided Plaintiff Petri with pages 62-68 of the Plan

containing Section 8.06 Suspension of Benefits.

25. The Appeals Committee failed to respond to three requests by Plaintiff Petri for a determination as to whether his employment *after* Normal Retirement Age would constitute Disqualifying Employment. Plaintiff Petri reached his Normal Retirement Age on March 27, 2007.

26. By letter dated March 14, 2007, Plaintiff Petri asked the Plan "[h]ow would you apply the rules of disqualifying employment after age 65, which I will attain on March 27, 2007, and how will I be treated if I choose to work". By letter dated May 17, 2007, Plaintiff Petri again asked the Plan :

> In particular, I would like the Fund to explain to me whether the work that caused the suspension of my pre-age-65 benefit falls within the definition of "trade or craft in which the Participant worked at any time under the Plan" as stated at Article 8.06(d)(2) for post-age-65 employment.

27. Plaintiff Petri never received a response to these two requests

28. By letter dated May 28, 2007, Plaintiff Petri again asked the Plan whether his employment would be Disqualifying Employment *after* Normal Retirement since he had attained normal retirement age. Plaintiff Petri asked:

> Would the same employment which you considered disqualifying employment before normal retirement age also be considered disqualifying employment after normal retirement age?

29. Plaintiff Petri did not receive a response to his May 28, 2007 request.

30. Although Plaintiff Petri does not have a copy of the Summary Plan Description, the complete Plan document, his benefit statement, or the Social Security

records upon which the Appeals Committee based its decision, in light of the Plan's drastically shortened statute of limitations, Plaintiff has filed this suit, without waiving his claim that such shorting of the statute of limitations is arbitrary and capricious, not in the interest of the participants and beneficiaries, and is a breach of fiduciary duty.

## FIRST CLAIM FOR RELIEF

31. In the case of a multiemployer plan like the one at bar, ERISA Section 203(a)(3)(B)(ii), 29 USC § 1053(a)(3)(B)(ii), permits the suspension of pension benefits due to a pensioner's return to Covered Employment "in the same industry, in the same trade or craft, and the same geographic area covered by the plan, *as when such benefits commenced.*"  [Emphasis supplied].

32. Under Department of Labor regulations §2530.203-3, suspension of benefits *before* Normal Retirement Age has different protection than suspension of benefits *after* Normal Retirement Age.  Suspension of benefits *before* Normal Retirement Age is limited by two things ,(a) the language of the Plan and (b) whether it impacts upon a retiree's entitlement to normal retirement benefits payable after attainment of normal retirement age.

33. Department of Labor regulations §2530.203-3(a) provide in pertinent part:

> A plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age, or for the suspension of that portion of pension benefits which exceeds the normal retirement benefit, or both, for any reemployment and without regard to the provisions of section 203(a)(3)(B) and this regulation to the extent (but only to the extent) that suspension of such benefits does not affect a retiree's entitlement to normal retirement benefits

payable after attainment of normal retirement age or the actuarial equivalent thereof.

34. The Plan provides that *before* Normal Retirement Age Disqualifying Employment includes (a) employment with any Contributing Employer; (b) employment with any employer the same or related business as a Contributing Employer and (e) employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer. See Section 8.06(d)(1)(a),(b) & (e) of the Plan.

35. The Plan provides that *after* Normal Retirement Age the term "Disqualifying Employment" means employment or self-employment that is (a) in an industry covered by the Plan when the Participant's pension payments began, (b) in the geographic area covered by the Plan when the Participant's pension began, and (c) in any trade or craft in which the Participant *worked at any time under the Plan.* [Emphasis supplied].

36. 29 CFR § 2530.203-3(c)(2)(ii) defines "trade or craft" as follows:

> A trade or craft is (A) a skill or skills, learned during a significant period of training or practice, which is applicable in occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) or (B) of this paragraph (c)(2)(ii). For purposes of this paragraph (c)(2)(ii), the determination whether a particular job classification, job description or industrial occupation constitutes or is included in a trade or craft shall be based upon the facts and circumstances of each case. Factors which may be examined include whether there is a customary and substantial period of practical, on-the-job training or a period of related supplementary instructions. Notwithstanding any other factor, the registration of an apprenticeship program with the Bureau of Apprenticeship and Training of the Employment Training Administration

of the U.S. Department of Labor is sufficient for the conclusion that a skill
or skills which is the subject of the apprenticeship program constitutes a
trade or craft.

37. By failing to limit the suspension of benefits *after* Normal Retirement Age to a trade or craft" covered by the Plan, "*as when such benefits commenced*", the Plan violates ERISA Section 203(a)(3)(B), 29 USC § 1053(a)(3)(B).

## SECOND CLAIM FOR INDIVIDUAL RELIEF

38. Department of Labor regulations provide that if a plan provides for suspension of benefits, "the plan shall adopt a procedure, and so inform the employees, whereupon an employee may request, and the plan administrator in a reasonable time will render, a determination whether specific contemplated employment will be section 203(a)(3)(b) service for purposes of plan provisions concerning suspension of benefits. 29 CFR § 2530.203-3(b)(6). The Plan document at Section 8.06(e)(4) also provides that a "participant may ask the Fund Office whether a particular employment will be disqualifying. The Fund Office shall provide the Participant with its determination in a timely manner".

39. In the instant case, although attempting to shorten the applicable statute of limitations to 90 days, the Plan failed and refused on three occasions to answer Plaintiff's Petri's question as to whether the same employment they found to be disqualifying before Normal Retirement Age would be disqualifying after Normal Retirement Age.

40. Not only did the Plan fail to inform Plaintiff of his right to ask for such a

11

determination, they advised him that his Normal Retirement benefit, to which he is now entitled, would be offset by the $76,194 in pension benefits now deemed denied..

41. Department of Labor regulations expressly prohibit the 100% offset contemplated here by the Plan.

42. 29 CFR § 2530.203-3(b)(3) states that any such deduction or offset can not exceed in one month 25% of that month's total benefit payment which would have been due but for the offset.

43. The Plan document at Section 8.06(g)(2) also provides that the offset can "not exceed 25% of the pension amount (before deduction)."

44. Plaintiff Petri has a compelling interest to have a timely determination whether each and every type of current work, apart from roofing, would be considered Disqualifying Employment *after* Normal Retirement Age

45. His current work, described in correspondence with defendants, includes not only roofing, but general home improvement work such as "vinyl siding", "painting", "windows", "small additions" and "alterations".

46. Plaintiff Petri wants to comply with the Plan rules and but needs to continue to work. Plaintiff wants to know type of work he can legally continue to do. Plaintiff is entitled to a timely determination as to whether it would be Disqualifying Employment *after* Normal Retirement Age to perform any of the above-enumerated types of work.

47. Defendants failure to provide such a determination and to use a 25% offset is

violation of claims procedure in the Plan and Department of Labor regulations.

### THIRD CLAIM FOR INDIVIDUAL RELIEF

48.  Plaintiff Petri presented credible evidence that during the years 2002, 2003, and 2004 Sheet Metal Works, Inc. was only involved in the sale of inventory and remodeling jobs having nothing to do with roofing or sheet metal work.

49.  Plaintiff Petri presented credible evidence that Sheet Metal Works, Inc. never contributed to the Pension Fund and did not contribute to any Fund for any of the years 2002-2005 at issue in this lawsuit.

50.  Defendants arbitrarily and capriciously ignored Plaintiff Petri's credible evidence and found that Plaintiff was engaged in Disqualifying Employment based merely upon an annual Social Security earnings record and the name "Sheet Metal Master, Inc".

51.  Department of Labor regulations and the instant Plan document contemplate that the determination of whether a benefit can permissibly be suspended is based upon a "month to month" determination.

52.  Defendants are entitled to only to two presumptions under the Department of Labor regulations and only upon a demonstrable showing that disclosure of these presumptions is made at least once every 12 months.  See 29 CFR § 2530.203-3(b)(7)(ii).

53.  Upon information and belief, defendants failed to make the required disclosure of the applicable presumptions to the retirees, including Plaintiff Petri, every

12 months.

54. Even if the presumptions were applied, they would not permit defendants to make a presumption of *an entire year* of Disqualifying Employment. The two presumptions are: (1) "unless it is unreasonable under the circumstances to do so, act on the basis of a rebuttable presumption that the retiree worked a period exceeding the plan's minimum number of hours that month" or (2) " unless it is unreasonable under the circumstances to do so, act on the basis of a rebuttable presumption that the retiree engaged in such employment for the same employer in work at that site for so long before the work in question as that same employer performed that work at that construction site". See 29 CFR § 2530.203-3(b)(7)(i). These presumptions are also contained in the Plan as Section 8.06(e)(2).

55. The Plan specifically provides that for pre-Normal Retirement Age Disqualifying Employment before July 1, 2003, a Pensioner shall have his *monthly* benefit suspended for *each month* he engaged in Disqualifying Employment together with an additional three months. For pre-Normal Retirement Age Disqualifying Employment after July 1, 2003, a Pensioner shall have his *monthly* benefit suspended for *each month* he engaged in Disqualifying Employment without the three month penalty. Section 8.06(b). Emphasis supplied.

56. The Plan specifically provides that for post-Normal Retirement Age Disqualifying Employment, a pensioner has to work more than 40 hours in "any month"

to have his monthly benefit suspended.

57. Defendants also acted arbitrarily and capriciously and in breach of their fiduciary duties to make determination that Plaintiff Petri was engaged in Disqualifying Employment for an entire year based upon an annualized earnings record which, in amount, would not even support a few months worth of earnings.

58. Defendants have no evidence that Plaintiff Petri engaged in Disqualifying Employment for the years 2002, 2003, and 2004 and such determination was arbitrary and capricious and should be reversed and the offset should be limited to those months during the year 2005 that Plaintiff performed roofing.

## FOURTH CLAIM FOR RELIEF

59. ERISA only contains a statute of limitations for actions to enforce the fiduciary standards, prohibited transaction rules, and other provisions of Part 4 of Title I. ERISA specifically does not provide for a statute of limitations with respect to claims for benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

60. In the absence of a governing federal statute for benefit cases, the courts developed a Federal common law which uses the most analogous state statutes of limitations for that Circuit. In New York, the Second Circuit Court of Appeals has applied the six year state statute of limitations for contracts to a benefit claim. See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pensions Benefit Plan, 698 F.2d 593 (2nd Cir. 1983), Valle v. Joint Plumbing Industry

Board, 623 F.2d 196, 202 n.10 (2d Cir. 1980).

61.  In contrast,  ERISA §413(a), 29 U.S.C. 1113(a) provides that suits to enforce fiduciary standards, must be brought within the earliest of:

- six years after the date of the last action constituting a part of the breach or violation; or

- in the case of an omission, six years after the latest date on which the fiduciary could have cured the breach or violation; or

- three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

62.  Defendants position that Plaintiff Petri only had 90 days to commence suit irrespective of whether his claim was a breach of fiduciary duty or a benefit claim abrogates the express statutory directive of ERISA regarding the statute of limitations for breach of fiduciary duty and the settled Federal common law of this Circuit regarding benefit claims.

63.  Section 404(a)(1)(A)(i) of ERISA, 29 U.S.C. Section 1104(a)(1)(A)(i), states in pertinent part:

**Sec. 404. (a)(1)** Subject to sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participant and beneficiaries...

64.  There are many fiduciary decisions which go against the interest of a particular participant or beneficiary which do not run afoul of this standard as the decision may still, none the less, be in the interest of the majority of the participants and beneficiaries.

65. In this instance, shortening the statute of limitations in abrogation of ERISA and Federal common law is not in the interest of *any* participant or beneficiary, but is solely in the interest of defendants.

67. Defendants adoption of and perpetuation of a 90 day statute of limitations in abrogation of ERISA and Federal common law is arbitrary and capricious and a breach of fiduciary duty under Section 404(a)(1)(A)(i) of ERISA, 29 U.S.C. Section 1104(a)(1)(A)(i)

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

A. Assume jurisdiction over this action;

B. Declare that by failing to limit the suspension of benefits after normal retirement age to a " trade or craft" covered by the Plan "as when such benefits commenced", the Plan violates ERISA Section 203(a)(3)(B), 29 USC § 1053(a)(3)(B).

C. Declare that the defendants must issue a timely determination as to whether any of the enumerated work that Plaintiff Petri wishes to perform in the future would be Disqualifying Employment after Normal Retirement Age and declare that defendant must follow the 25% limitation on the recovery of any offset established in this proceeding;

D. Declare that defendants determination that Plaintiff Petri engaged in Disqualifying Employment for the years 2002, 2003 and 2004 was arbitrary and capricious and limit the offset established in this proceeding to those months during the year 2005 that Plaintiff performed roofing ;

E.  Declare that the shortening the statute of limitations in abrogation of ERISA and Federal common law is not in the interest of *any* participant or beneficiary and consequently is a breach of fiduciary duty under Section 404(a)(1)(A)(i) of ERISA, 29 U.S.C. Section 1104(a)(1)(A)(i).

F.  Enjoin Defendants from continuing to violate ERISA and/or the terms of the Plan, as set forth above;

G.  Order Defendants to reform the terms of the Plan and/or their practices to bring them into conformity with ERISA;

H.   Award Plaintiff reasonable attorney's fees, costs and expenses;

I.  Award Plaintiff any other and additional relief to which he might be entitled by law or pursuant to this Court's discretion.

Dated:   West Hempstead,  New York
         June 29, 2007

					QUESADA & MOORE, LLP

					By: _____
					Victoria Quesada (VQ 2392)
					128 Avon Place
					West Hempstead, NY 11552
					(516) 486-7307

					Attorney for Plaintiff
					John Petri

F:\Cases\Petri\PetriComplaint.wpd

19