**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | |
|---|---|
| **JOHN PETRI,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION NO.  07-6142** |
| ) | **JUDGE KOELTL** |
| **v.** ) | |
| ) | |
| **SHEET METAL WORKERS'** ) | **RULE 56.1 STATEMENT OF** |
| **NATIONAL PENSION FUND, et al.,** ) | **UNDISPUTED FACTS IN SUPPORT** |
| ) | **OF DEFENDANTS' MOTION FOR** |
| **Defendants.** ) | **SUMMARY JUDGMENT** |
| ) | |

-------------------------------------------------------x

Pursuant to Local Rule 56.1, Defendants, Sheet Metal Workers' National Pension Fund and its Trustees, hereby submit this Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment.

**I.    *Background***

1.    The Fund is a multiemployer jointly-administered labor-management pension fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Fund is a tax-qualified employee pension benefit plan within the meaning of Sections 3(2) and 3(3) of ERISA, 29 U.S.C. §§ 1002(2) and (3), and is maintained for the purpose of providing retirement and related benefits to eligible participants and their beneficiaries. The Fund is also a multi-employer defined benefit pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  *See* Declaration of Marc E. LeBlanc ("LeBlanc Dec.") at ¶ 3.

2.    The Fund is governed by Rules and Regulations (the "Plan") and an Amended and Restated Declaration of Trust (the "Agreement").  LeBlanc Dec. at ¶ 4.

3.    Article IV, Section 2 of the Agreement sets forth the powers, duties and obligations of the Fund's Trustees:

> The Trustees shall have the sole and absolute power, authority and discretion to construe the provisions of this Agreement and any construction adopted by the Trustees shall be binding upon the International Union, the Locals, the Employers, the Employees and their families, dependents, beneficiaries and/or legal representative, and during review of any type whatsoever of any construction of this Agreement.

LeBlanc Dec., Ex. A.

4.     Section 8.03 of the Plan provides the Fund's Trustees with the discretionary authority over, *inter alia*, determinations of pension eligibility and benefits:

> (a)     The Trustees shall have the sole and absolute power, authority and discretion to determine:
>
> (1)     the standard of proof required in any case;
>
> (2)     the application and interpretation of this Plan;
>
> (3)     entitlement to or amount of pension;
>
> (4)     the disability, the timing, extent and or duration of the disability, or non-disability of Participants and the effect these determinations have on the Participant's eligibility for Disability Benefits under the Plan;
>
> (5)     the crediting of Future or Past Service Credit and/or Contribution Hours; and
>
> (6)     the crediting of Hours of Work and Years of Service.
>
> (b)     The decisions of the Trustees or any delegate of the Trustees with respect to any of the foregoing shall be final and binding.  Wherever in the Plan the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and non-discriminatory manner.  In addition, whenever the Trustees have delegated their power or authority to a committee or person, the delegate shall have the same power and authority as the Trustees to the extent of the Trustees' delegation to such committee or person.

LeBlanc Dec., Ex. B.

5.      To be eligible under the Plan to receive Early Retirement Pension benefits (benefits commencing prior to the Plan's normal retirement age of 65), a participant must "retire" as defined in Section 5.01 of the Plan.  LeBlanc Dec. at ¶ 7.

6.      Pursuant to Section 5.01 of the Plan, "[a] Participant is 'retired' within the meaning of the Plan, if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent."  LeBlanc Dec., Ex. B.

7.      Petri, born March 27, 1942, began work in the sheet metal industry in 1960 as a member of Sheet Metal Workers Local 38.  LeBlanc Dec., Ex. D at SMWNPF - 0001.

8.      Between 1960 and 1988, Petri accrued 24 years and 3 months of Pension Credit under the Plan based on covered employment in the sheet metal industry.  LeBlanc Dec., Ex. D at SMWNPF - 0001.

9.      During the 1980s, Petri started two corporations, Petri Construction and Sheet Metal Master, Inc., through which he performed roofing, siding and related residential contractor work.  LeBlanc Dec., Ex. D at SMWNPF – 0003, 334.

10.     From 1988 through 2002, Petri did not accrue pension credits while he worked as the owner of Petri Construction and Sheet Metal Master.  LeBlanc Dec. at ¶ 10, Ex. D at SMWNPF – 0001.

**II.**     ***Petri's Pension Application***

11.     Petri applied for Early Retirement Pension benefits from the Fund, submitting a Retirement Declaration dated April 24, 2002.  LeBlanc Dec., Ex. D at SMWNPF – 0015-0016.

12.     In that Retirement Declaration, Petri certified as follows:

I certify that the LAST DATE I was employed in the Sheet Metal Industry was 8/97 and that I have not worked in any Disqualifying Employment as defined in this summary, after the effective date of my pension.

LeBlanc Dec., Ex. D at SMWNPF – 0015.

13.     Petri's Declaration further stated that:

I understand that I am required to notify the Fund in writing within 21 days of starting any work of any type that is or may be Disqualifying Employment, as defined in the attached Summary of Disqualifying Employment.  I understand that if I fail to provide such notice, or make any willful misrepresentations about any Disqualifying Employment, my monthly benefit will be suspended for an additional 3 months.

LeBlanc Dec., Ex. D at SMWNPF – 0015.

14.     Section 8.02 of the Plan provides that:

Each Participant, Pensioner and Beneficiary shall furnish the Board of Trustees with any information or proof requested by it and reasonably required to administer the Pension Plan.  If a Participant or Pensioner or other claimant to benefits hereunder makes a willfully false statement material to his claim for benefits, or furnishes fraudulent information or proof relative to the claim for benefits, then benefits not vested under this Plan (as determined under Section 8.07) may be denied, suspended, or discontinued.  The Trustees shall have the right to recover any benefit payments made in reliance on any willfully false or fraudulent statement, information or proof submitted by a Participant, Pensioner or Beneficiary.

LeBlanc Dec., Ex. B.

13.     Based on the Retirement Declaration, the Fund began paying Petri Early Retirement Pension benefits, made effective April 1, 2002.  LeBlanc Dec. at ¶ 10.

III.    *Earnings Audit*

14.     In 2006, Petri was selected for a random earnings audit by the Fund.  LeBlanc Dec. at ¶ 11.

- 4 -

15.     The records provided to the Fund by the Social Security Administration for the years 1999 through 2005 revealed that Petri had been employed by Sheet Metal Master during that period.  LeBlanc Dec., Ex. D at SMWNPF – 0009.

16.     The Social Security wages reported for the years 2001–2005 were $9,000; $9,600; $18,000; $35,768; and $26,000, respectively.  LeBlanc Dec., Ex. D at SMWNPF – 0009.

17.     The Fund performed Dun & Bradstreet searches on Petri Construction and Sheet Metal Master that showed that Petri had changed the name of Sheet Metal Master to John's Metal Works in 2005, and that John's Metal Works remained in operation.  LeBlanc Dec., Ex. D at SMWNPF – 0010-0013.

18.     The Dun & Bradstreet reports stated that the Line of Business for both Sheet Metal Master and John's Metal Works was "Roofing/Siding Contractor."  LeBlanc Dec., Ex. D at SMWNPF – 0010-0013.

## IV.     Termination of Benefits

19.     By letter dated September 12, 2006, the Fund advised Petri that the SSA records established that he had been employed by Sheet Metal Master after the April 1, 2002 effective date of his retirement, and that this employment met the Fund's definition of Disqualifying Employment under Section 8.06(d) of the Plan.  LeBlanc Dec., Ex. D at SMWNPF – 0005-0006.

20.     Section 8.06(d) of the Plan defines Disqualifying Employment before "normal retirement age" as follows:

> When used in Section 8.06(a) and 8.06(b), the term "Disqualifying Employment" means:
>
> (A)     employment with any Contributing Employer;
>
> (B)     employment with any employer in the same or related business as any Contributing Employer;

     (C)     self-employment in the same or related business as a Contributing Employer;

     (D)     employment or self-employment in any business which is under the jurisdiction of the Union; or

     (E)     employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer.

LeBlanc Dec., Ex. B.

21.     Section 1.35 of the Plan defines "Sheet Metal Industry" expansively to include: (a) work of the type covered by any collective bargaining agreement to which a sheet metal local is a party, (b) work described in the Constitution of the Sheet Metal Workers' International Association, (c) work in a related building trade and (d) work which a sheet metal worker is able to perform because of his sheet metal training.

> The term "Sheet Metal Industry" shall mean any and all types of work covered by Collective Bargaining Agreements to which the Union and/or any Local are a party; or under the trade jurisdiction of the Union, as that trade jurisdiction is described in the SMWIA's constitution; or in a related building trade; or any other work to which a sheet metal worker has been assigned, referred, or can perform because of his skills and training as a sheet metal worker.

LeBlanc Dec., Ex. B.

22.     Article One, Section 5(y) of the Sheet Metal Workers' International Association Constitution states as follows:

> **SEC. 5(y).  Roofing, Damp and Waterproofing.**  The right to apply and install (i) slate, tile, asbestos and asphalt roofing shingles and all cementing, laying of felt, paper, insulation or other underlayment, dressing, punching, cutting either by hand or by machinery in connection with slate, tile, asbestos and asphalt shingles and any and all substitute materials taking the place of slate, tile, asbestos and asphalt shingles and the removal of slate and tile when the same is to be relaid.

LeBlanc Dec., Ex. C.

23.     The September 12, 2006 letter advised Petri that the Fund had terminated his Early Retirement Pension benefits as a result of this Disqualifying Employment and informed him that the Fund expected reimbursement of the $76,194 already paid.  LeBlanc Dec., Ex. D at SMWNPF – 0005-0006.

24.     The September 12, 2006 letter further advised Petri of his right to appeal the Fund's decision to the Appeals Committee.  LeBlanc Dec., Ex. D at SMWNPF – 0005-0006.

## V.     Appeal and Correspondence

25.     By letter dated February 5, 2007, Petri filed an appeal of the Fund's determination to the Appeals Committee.  LeBlanc Dec., Ex. D at SMWNPF – 0003.

26.     In that letter, Petri acknowledged that he had operated Sheet Metal Master since 1986, in the "residential siding and roofing business" – work that he characterized as including "slate and tile repair, shingle roofing and some remodeling and carpentry work."  LeBlanc Dec., Ex. D at SMWNPF – 0003.

27.     In his February 5, 2007 letter, Petri stated that Sheet Metal Master "ceased all operations in 2005" but did not disclose that he had begun a new company at that time, John's Metal Works.  LeBlanc Dec., Ex. D at SMWNPF – 0003.

28.     By letter dated March 5, 2007, Petri acknowledged that John's Metal Works was "involved in the same type of work (residential roofing, siding, and alterations) as was Sheet Metal Master Inc."  LeBlanc Dec., Ex. D at SMWNPF – 0004.

29.     Petri asserted that the income for 2001, 2002 and 2003 constituted "repayment of officer loans from previous years, from sales of equipment and inventory and was taken as officers [sic] salaries to meet health insurance requirements."  His explanation as to the income

for 2004 and 2005 was that it "came from a few small remodeling jobs for friends."  LeBlanc Dec., Ex. D at SMWNPF – 0003.

30.      In his February 5, 2007 and March 5, 2007 letters to the Fund, Petri acknowledged that he began Sheet Metal Master, Inc. in 1986 and operated it through 2005, when Petri commenced operations of Johns Metal Works, Inc.   LeBlanc Dec., Ex. D at SMWNPF – 0003, 0004.

31.      Petri conceded that the companies were engaged in "residential roofing, siding and alterations."  LeBlanc Dec., Ex. D at SMWNPF – 0003-0004.

**VI.      Appeals Committee's Determination**

32.      The Appeals Committee heard Petri's appeal on March 30, 2007.  LeBlanc Dec., Ex. E.

33.      A complete copy of the record on appeal is annexed as Exhibit D to the Declaration of Marc LeBlanc, attached hereto.    Based on that record, the Appeals Committee denied Petri's appeal for reinstatement of his Early Retirement Pension benefits.  LeBlanc Dec., Exs. D, E and F.

34.      The Committee found that Petri had engaged in Disqualifying Employment because "the fund has many Contributing Employers that work in the roofing industry" and that "such duties are performed by sheet metal workers, particularly in the roofing segment of the industry or in connection with subcontracting to roofing and insulating contractors."  LeBlanc Dec., Ex. F.

35.     In addition, the Committee found that Petri had made materially false statements in his April 24, 2002 Retirement Declaration, where he stated that he had not worked in the sheet metal industry since August 1997.  LeBlanc Dec., Ex. F.

36.     Because of this false statement, the Committee upheld the Fund's request to recover the 2002-2006 payment of benefits to Petri.  LeBlanc Dec., Ex. F.

37.     The Fund advised Petri of the Appeals Committee's determination by letter dated April 4, 2007, informing him of his right to bring an action against the Plan or Trustees. LeBlanc Dec., Ex. F.


Date:  September 26, 2008                          Respectfully Submitted,


                                                  __s/Christopher J. Schulte_____
                                                  Christopher J. Schulte
                                                  (admitted *pro hac* vice)
                                                  Marc H. Rifkind
                                                  Brian J. Petruska (SDNY No. 6173)
                                                  SLEVIN & HART, P.C.
                                                  1625 Massachusetts Ave., N.W.
                                                  Suite 450
                                                  Washington, DC
                                                  (202) 979-8700 (tel)
                                                  (202) 234-8231 (fax)
                                                  **Counsel for Plaintiffs**

                                                  Adrienne L. Saldana
                                                  SPIVAK LIPTON LLP
                                                  1700 Broadway
                                                  New York, NY 10019
                                                  (212) 765-2100 (tel)
                                                  (212) 765-8954 (fax)
                                                  **Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of September, 2008, a copy of the foregoing document was served via the Southern District of New York's CM/ECF system upon all counsel of record.  A copy was also sent to the following via overnight mail:


William D. Frumkin, Esq.
Sapir & Frumkin, LLP
399 Knollwood Road, Suite 310
White Plains, New York  10603


_s/ Christopher J. Schulte _____
Christopher J. Schulte

- 10 -