UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

JOHN PETRI,

                      Plaintiff,              07 Civ. 6142 (JGK)

          - against -                         MEMORANDUM OPINION AND
                                              ORDER
SHEET METAL WORKERS' NAT'L PENSION
FUND, ET AL.,

                      Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

     This is an action arising from an allegedly wrongful
refusal to reinstate Early Retirement Pension benefits under a
union employee benefits plan subject to the requirements of the
Employee Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. § 1001, et seq.  The Sheet Metal Workers' National
Pension Fund ("the Fund"; collectively with the Fund's Board of
Trustees, "the defendants") terminated the plaintiff John
Petri's Early Retirement Pension benefits when the Fund
determined that the plaintiff was engaged in disqualifying
employment in violation of the Plan regulations.  The Fund's
Appeals Committee upheld that determination.  The plaintiff now
seeks review of the Appeals Committee decision, requesting
reinstatement of his Early Retirement Pension benefits and
additional equitable relief.  The defendants move for summary
judgment and the plaintiff opposes that motion.

I.

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial.  See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998);

<u>Cummins v. Suntrust Capital Mkts., Inc.</u>, No. 07 Civ. 4633, 2009 WL 2569127, at *1 (S.D.N.Y. Aug. 20, 2009).

II.

The following facts are undisputed except where otherwise noted.

The Fund is a multiemployer jointly-administered labor-management pension fund established pursuant to 29 U.S.C. § 186(c)(5).  (Defendants' Local Rule 56.1 Statement of Material Facts ("Defs.' 56.1 Stmt.") ¶ 1; Plaintiff's Local Rule 56.1 Statement of Material Facts ("Pl.'s 56.1 Stmt.") ¶ 1.)  The Fund is likewise a tax-qualified multiemployer defined employee pension benefit plan under 29 U.S.C. §§ 1002(2)-(3) & (37), maintained for the purpose of providing retirement and other benefits to eligible participants.  (Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. ¶ 1.)  The Trustees of the Fund determine eligibility for pension benefits and the benefits are paid from a fund to which contributing employers contribute. (Defendants' Reply Local Rule 56.1 Statement of Material Facts ("Defs.' Reply 56.1 Stmt.") ¶ 41; Pl.'s 56.1 Stmt. ¶ 41.)

The Fund is governed by Rules and Regulations ("the Plan") and an Amended and Restated Declaration of Trust ("the Agreement").  (Defs.' 56.1 Stmt. ¶ 2; Pl.'s 56.1 Stmt. ¶ 2.) Under the Plan and the Agreement, the Trustees of the Fund have

4

discretionary authority over construction of the Agreement and determinations of pension eligibility and benefits. (Defs.' 56.1 Stmt. ¶¶ 3-4; Pl.'s 56.1 Stmt. ¶¶ 3-4.) Under the Plan an employee must "retire" before receiving Early Retirement Pension benefits, and an employee is not "retired" if the employee is engaged in Disqualifying Employment. (Defs.' 56.1 Stmt. ¶¶ 5-6; Pl.'s 56.1 Stmt. ¶¶ 5-6.)

The plaintiff began work in the sheet metal industry in 1960 as a member of Sheet Metal Workers Local 38, and accrued 24 years and 3 months of Pension Credit by 1988. (Defs.' 56.1 Stmt. ¶¶ 7-8; Pl.'s 56.1 Stmt. ¶¶ 7-8.) During the 1980s, the plaintiff started two corporations, Petri Construction and Sheet Metal Master, Inc., which performed roofing, siding and related residential contractor work. (Defs.' 56.1 Stmt. ¶ 9; Pl's 56.1 Stmt. ¶ 9.) The parties agree that the plaintiff earned no Pension Credits after 1988, but they disagree as to whether he was employed as the owner of Sheet Metal Master after 1988. (Defs.' 56.1 Stmt. ¶ 10; Pl.'s 56.1 Stmt. ¶ 10.) The plaintiff alleges that he did not work as the owner of Sheet Metal Master during the entire period between 1988 and 2002, and that the company was only kept open for the purpose of maintaining family health insurance. (Pl.'s 56.1 Stmt. ¶ 10.) The defendants, on the other hand, allege that the plaintiff worked as the owner of

Petri Construction and Sheet Metal Master during the entire period from 1988 to 2002. (Defs.' 56.1 Stmt. ¶ 10.)

On April 24, 2002, the plaintiff submitted a Retirement Declaration certifying that his last employment in the sheet metal industry was "8/97", that he had not worked in Disqualifying Employment after that day, and he applied for Early Retirement Pension benefits. (Defs.' 56.1 Stmt. ¶¶ 11-12; Pl.'s 56.1 Stmt. ¶¶ 11-12.) Under the Retirement Declaration and the Plan the plaintiff was required to notify the Fund within twenty-one days of starting any work that may be Disqualifying Employment, and the plaintiff's benefits may be denied, suspended or discontinued—and repayment required—if the plaintiff made any willfully false or fraudulent statements material to his benefits claim. (Defs.' 56.1 Stmt. ¶¶ 13-14; Pl.'s 56.1 Stmt. ¶¶ 13-14.) Effective April 1, 2002, the Fund began paying the plaintiff Early Retirement Pension benefits. (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Stmt. ¶ 13.) The parties dispute whether the plaintiff qualified as "retired" under the Plan when payments commenced. (Pl.'s 56.1 Stmt. ¶ 35; Defs.' Reply 56.1 Stmt. ¶ 35.)

The Fund selected the plaintiff for an earnings audit in 2006, although the parties disagree as to how he was selected. (Defs.' 56.1 Stmt. ¶ 14; Pl.'s 56.1 Stmt. ¶ 14.) The defendants allege that the audit was random, while the plaintiff blames

personal animosity between himself; Ken Colombo, the Fund Coordinator; and Gino Colombo, Ken Colombo's father and former Business Manager of Local 38.  (Defs.' 56.1 Stmt. ¶ 14; Pl.'s 56.1 Stmt. ¶¶ 14, 36; Defs.' Reply 56.1 Stmt. ¶ 36.)  The audit revealed Social Security Administration records of plaintiff's earnings from Sheet Metal Master from 1999 to 2005, although the parties dispute whether those earnings were from employment. (Defs.' 56.1 Stmt. ¶¶ 15-16; Pl.'s 56.1 Stmt. ¶¶ 15-16.)

In a letter dated September 12, 2006, the Fund advised the plaintiff that he was engaged in Disqualifying Employment and that his Early Retirement Benefits were terminated, and it notified him of his right to appeal the Fund's decision to the Appeals Committee.  (Defs.' 56.1 Stmt. ¶¶ 19-24; Pl.'s 56.1 Stmt. ¶¶ 19-24, 37(G); Defs.' Reply 56.1 Stmt. ¶ 37(G).)  The letter also indicated that the Fund expected the plaintiff to reimburse the Fund the $76,194.00 in benefits that had already been paid.  (Defs.' 56.1 Stmt. ¶ 23; Pl.'s 56.1 Stmt. ¶ 23.) The plaintiff alleges that there is a material issue of fact regarding whether the Fund's decision to terminate benefits was made by Ken Colombo or Debbie Elkins, the Fund Pension Manager. (Pl.'s 56.1 Stmt. ¶ 37.)  The defendants dispute this uncertainty and argue in any case that it is not material to the issues before this Court because the decision at issue in this

case is the subsequent decision of the Appeals Committee.
(Defs.' Reply 56.1 Stmt. ¶ 37.)

In a February 5, 2007 letter, the plaintiff appealed the
Fund's determination to the Appeals Committee.  (Defs.' 56.1
Stmt. ¶ 25; Pl.'s 56.1 Stmt. ¶ 25.)  The letter acknowledged
that Sheet Metal Master had been in the "residential siding and
roofing business," including "slate and tile repair, shingle
roofing and some remodeling and carpentry work," but claimed
that the company was kept open only for health insurance
purposes, only performed a "few small remodeling jobs for
friends," and that its recent income came only from repayment of
officer loans, equipment and inventory sales, and was taken as
officers salaries to meet health insurance requirements.
(Defs.' 56.1 Stmt. ¶¶ 26, 29; Pl.'s 56.1 Stmt. ¶¶ 26, 29; Decl.
of Marc E. LeBlanc Ex. D, at SMWNPF-0003, Sept. 24, 2008
("LeBlanc Decl.").)  The same letter indicated that Sheet Metal
Master had ceased operations in 2005, but failed to disclose the
existence of John's Metal Works.  (Defs.' 56.1 Stmt. ¶ 27; Pl.'s
56.1 Stmt. ¶ 27.)  In a March 5, 2007 letter, the plaintiff
admitted that John's Metal Works was involved in the same types
of work as Sheet Metal Master—"residential roofing, siding, and
alterations".  (Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28;
LeBlanc Decl. Ex. D, at SMWNPF-0004.)  He also claimed that it
served the same purpose for him—family health insurance.

8

(Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28; LeBlanc Decl. Ex. D, at SMWNPF-0004.)

The Appeals Committee also had additional correspondence from the plaintiff dated March 12, 2007 and March 14, 2007, in which the plaintiff attempted to explain the existence and function of Sheet Metal Master and John's Metal Works. (LeBlanc Decl. Ex. D, at SMWNPF-333-34.) In the March 12 letter, the plaintiff explained, among other things that John's Metal Works is licensed in Westchester County as a home improvement contractor. (LeBlanc Decl. Ex. D., at SMWNPF-333.) In the March 14 letter, the plaintiff explained that when he closed Petri Construction, he kept Sheet Metal Master to do "windows, maintenance, leak repairs, painting, vinyl siding, small additions (all residential and mostly for friends) . . . ." (LeBlanc Decl. Ex. D, at SMWNPF-334.)

The Appeals Committee also had certain Dun & Bradstreet reports. The Dun & Bradstreet reports indicated that Sheet Metal Master and John's Metal Works are in the "Roofing/Siding Contractor" line of business, although it is unknown where Dun & Bradstreet receives its information. (Defs.' 56.1 Stmt. ¶ 18; Pl.'s 56.1 Stmt. ¶ 18.)

The Appeals Committee decided the plaintiff's appeal, without the plaintiff present, on March 30, 2007 and notified the plaintiff in a letter dated April 4, 2007. (Defs.' 56.1

Stmt. ¶¶ 32, 37; Pl.'s 56.1 Stmt. ¶¶ 32, 38(D); Defs.' Reply
56.1 Stmt. ¶ 38(D).)   The Appeals Committee found disqualifying
employment under the following provisions of the definition:
"(A) employment with any Contributing Employer" (because Sheet
Metal Master was a contributing employer), "(B) employment with
any employer in the same or related business as any Contributing
Employer" (referring to both Sheet Metal Master and John's Metal
Works), and "(E) employment in the Sheet Metal Industry that is
not covered by a collective bargaining agreement between the
Union and the employer" (presumably referring to John's Metal
Works).   (Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Stmt. ¶ 20; LeBlanc
Decl. Ex. F, at SMWNPF-331.)   The Appeals Committee noted:

> The Committee considered your assertion that Sheet
> Metal Master performed residential siding and roofing
> business and noted that the services your company
> provided related to "slate and tile repair, shingle
> roofing and some remodeling and carpentry work."
> After careful review the Committee determined that the
> Fund has many Contributing Employers that work in the
> roofing industry and noted that such duties are
> performed by sheet metal workers, particularly in the
> roofing segment of the industry or in connection with
> subcontracting to roofing and insulating contractors.
> Furthermore, it was noted that Sheet Metal Master had
> been a Contributing Employer with the Fund.

(LeBlanc Decl., Ex. F, at SMWNPF-331.)   The Appeals Committee
also noted:

> The Committee concluded that at the time you made
> application for benefits you made a false statement
> material to your claim and directed staff to terminate
> the benefit.   Please be advised that you continue to
> qualify for a Normal Retirement Pension, provided you

are not working in Disqualifying Employment; however,
the Fund will withhold future benefits until fully
reimbursed.

(LeBlanc Decl., Ex. F, at SMWNPF-332.)  The Appeals Committee

therefore denied the plaintiff's request to reinstate his Early

Retirement Pension and rejected his request that the Fund cease

any attempt to recover the benefits paid in the amount of

$76,194.00.  (LeBlanc Decl., Ex. F, at SMWNPF-331-32.)

     The Appeals Committee spends approximately five to ten

minutes reviewing each appeal, and generally grants less than

one percent of appeals in favor of the participant.  (Pl.'s 56.1

Stmt. ¶ 38(F) & (H); Defs.' Reply 56.1 Stmt. ¶ 38(F) & (H).)  On

the day the Appeals Committee decided the plaintiff's case, the

Committee consisted of Paul Collins, a union trustee; and Ronald

Palmerick, an employer trustee.  (Pl.'s 56.1 Stmt. ¶ 38(I);

Defs.' Reply 56.1 Stmt. ¶ 38(I).)  Also present for the meeting

were Fund Administrator and General Counsel Marc LeBlanc, Fund

Coordinator Ken Colombo, and Pension Manager Debbie Elkins.

(Pl.'s 56.1 Stmt. ¶ 38(I); Defs.' Reply 56.1 Stmt. ¶ 38(I).)

Elkins takes notes during Committee meetings, and discards them

after the meeting minutes are approved.  (Pl.'s 56.1 Stmt. ¶

38(L); Defs.' Reply 56.1 Stmt. ¶ 38(L).)

     Prior to submitting this application, the plaintiff

submitted several requests for a determination whether

contemplated employment would constitute Disqualifying

Employment.  (Pl.'s 56.1 Stmt. ¶ 43; Defs.' Reply 56.1 Stmt. ¶ 43.)  The plaintiff contends the Fund failed to respond to these requests, but the defendants allege that they did respond. (Pl.'s 56.1 Stmt. ¶ 43; Defs.' Reply 56.1 Stmt. ¶ 43.)  On March 27, 2007 the plaintiff reached Normal Retirement Age and he submitted a still-pending application for reinstatement of his Normal Retirement Pension benefits on November 3, 2008. (Pl.'s 56.1 Stmt. ¶¶ 44-45; Defs.' Reply 56.1 Stmt. ¶¶ 44-45.)

On June 29, 2007, the plaintiff brought the present action challenging the determination of the Appeals Committee.  The plaintiff also seeks declaratory relief on the following issues: (1) whether the Plan may offset 100 percent of his benefits to recover the overpayment, (2) whether the plaintiff's current work is Disqualifying Employment after Normal Retirement Age, and (3) whether the time to seek court review of a decision of the Appeals Committee can properly be limited to 90 days as provided in the Plan.

On September 26, 2008 the defendants filed this motion for summary judgment.  The defendants argue that, as a matter of law, the decision of the Appeals Committee was not arbitrary and capricious.  Further, the defendants argue that the requests for declaratory relief regarding offsets are not ripe and that the plaintiff lacks standing to challenge the 90 day deadline to appeal.  The plaintiff opposes this motion.

### III.

### A.

When an ERISA plan provides an administrator with
discretion to determine benefits, the administrator's
determination of benefits should be upheld unless it was
arbitrary or capricious.  Firestone Tire & Rubber Co. v. Bruch,
489 U.S. 101, 115 (1989); see also Celardo v. GNY Auto. Dealers
Health & Welfare Trust, 318 F.3d 142, 145 (2d Cir. 2003); Pagan
v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995); Gannon
v. Aetna Life Ins. Co., No. 05 Civ. 2160, 2007 WL 2844869, at *7
(S.D.N.Y. Sept. 28, 2007).  There is no dispute that the Plan
contains explicit language granting the Trustees the discretion
to construe the Plan and determine pension eligibility and
benefits.  (See LeBlanc Decl. Ex. B, at § 8.03.) Under arbitrary
and capricious review, the decision to deny benefits may be
overturned "only if it was without reason, unsupported by
substantial evidence or erroneous as a matter of law."  Pagan,
52 F.3d at 442 (internal quotation marks omitted).

The United States Supreme Court recently reiterated that
when the plan administrator has a conflict of interest, that
conflict is a factor that should be weighted as a factor by the
reviewing court in determining whether the plan administrator
abused its discretion in denying benefits.  See Metro. Life Ins.

Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008) (citing Firestone, 489 U.S. at 115).  The circumstances of the particular case determine the weight accorded to the conflict of interest.  See id. at 2351.  While the plaintiff opposes a deferential standard of review, the Supreme Court's decision in Glenn clearly does not call for a different standard of review even when the plan administrator has a conflict of interest.  See Glenn, 128 S. Ct. 2350 (Firestone does not imply a "change in the standard of review, say, from deferential to de novo review." (emphasis in original)).[1]  Rather, when an administrator evaluates and pays benefits claims, the court "must take [the conflict] into account and weigh [it] as a factor in determining whether there was an abuse of discretion, but [the conflict] does not make de novo review appropriate."  McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008) (citing Glenn, 128 S. Ct. at 2348); see also Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82-83 (2d Cir. 2009).  Whether the "conflict of interest affected the choice of a reasonable interpretation" is just "one of

---

[1] Prior to the United States Supreme Court's decision in Glenn, the Court of Appeals for the Second Circuit established an exception to the arbitrary and capricious standard of review when the plan administrator is shown to have a conflict of interest.  See Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1255-56 (2d Cir. 1996).  Under the old exception, a de novo standard of review was appropriate when the conflict was shown to affect the reasonableness of the plan administrator's decision.  See id.  However, the Court of Appeals for the Second Circuit has abandoned this exception in light of Glenn.  See McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 128 (2d Cir. 2008).  Now, in this Circuit a conflict of interest is merely to be weighed as a factor in the abuse of discretion analysis.  See id. (citing Glenn, 128 S. Ct. at 2348).

several different considerations" for the reviewing court.
Hobson, 574 F.3d at 83 (internal quotation marks omitted)
(quoting McCauley, 551 F.3d at 133).

The defendants rely on two cases, one from the Court of
Appeals for the Ninth Circuit and one from the District of New
Jersey, for the proposition that a multiemployer pension plan is
different from a for-profit pension plan with respect to
evaluating a possible conflict of interest.  See Jones v.
Laborers Health & Welfare Trust Fund, 906 F.2d 480, 481 (9th
Cir. 1990) ("Because the Board of Trustees consists of both
management and union employees, there is no conflict of interest
to justify less deferential review."); Martinez v. Dist. 1199J
Nat'l Union of Hosp. & Health Care Employees, AFSCME, AFL-CIO,
280 F. Supp. 2d 342, 353 (D.N.J. 2003) (adopting arbitrary and
capricious rather than heightened standard of review for appeal
of denial of benefits by multiemployer plan because the profit
motive is absent).  According to these cases, a multiemployer
plan does not receive even a "sliding scale" standard of review,
unlike a for-profit pension plan and there is no basis to
deviate from he arbitrary and capricious standard of review when
the Plan provides the Trustees with discretion.  See Jones, 906
F.2d at 481; Martinez, 280 F. Supp. 2d at 353.  The Court of
Appeals for the Second Circuit has not ruled on the question of
whether the distinction between a multiemployer pension plan and

a plan operated by or on behalf of a for-profit institution is relevant to whether the reviewing court should consider the alleged conflict of interest in reviewing the determination.

In this case the decision of the multiemployer Fund was made by an Appeals Committee with two trustees—one union trustee and one management trustee.  The plaintiff argues that the Fund has a conflict of interest due to several factors.  First, the plaintiff alleges personal animosity between the plaintiff and Gino Colombo (a former Fund Trustee) and Ken Colombo (the current Fund Coordinator).  Second, the plaintiff argues that the employer representative on the Appeals Committee necessarily has a motivation to eliminate potential competitors.[2]  Further, the plaintiff alleges a conflict because the Appeals Committee does not have formal criteria for determining an appeal and the notes from the Appeals Committee meeting were destroyed after the minutes were prepared.  In addition to other alleged conflicts, the plaintiff argues that there is a conflict of interest because the defendants both determine who is eligible for Fund benefits and pay the benefits out of the Fund of which they are the Trustees.

---

[2] The alleged conflict of interest regarding the employer trustee undercuts the plaintiff's argument that he was not in competition with other sheet metal employers.  The employer trustee has no motive to eliminate the plaintiff as a competitor unless the plaintiff is in fact a competitor.  Thus, there is no conflict of interest here unless the plaintiff is actually engaged in Disqualifying Employment, making him ineligible for Early Retirement Pension benefits.  In any event, this alleged conflict is so tangential as to warrant little consideration, particularly in view of the reasonableness of the decision reached by the unanimous vote of the Trustees.

Following Glenn, it is clear that an alleged conflict of interest must be weighed as a factor in determining whether the Appeals Committee's determination was arbitrary and capricious but does not trigger de novo review.  See Glenn, 128 S. Ct.  at 2346.  Here, the Trustees have an interest in seeing that the assets of the Fund are preserved, although they also have a fiduciary responsibility to see that the terms of the Plan are observed.  On the other hand, the fact that the Appeals Committee included both a union and management representative with equal say in the proceedings does moderate any potential conflict.  Cf. Jones, 906 F.2d at 481.  Even in the context of an ERISA plan administered for a for-profit corporation by an insurance company, the Supreme Court noted that the conflict of interest raised by a potential interest in denying benefits should "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ."  Glenn, 128 S. Ct. at 2351.  Plainly, the establishment of a committee of a union and management trustee to make decisions on appeals is an active step to reduce or eliminate any conflict.

As for the Appeals Committee's lack of formal criteria for determining appeals, the cases the plaintiff cites to show that this should weigh heavily in considering the alleged conflict of interest are cases where the administrator was not granted the

17

discretionary authority enjoyed by the Fund.  See Locher v. Unum

Life Ins. Co. of Am., 389 F.3d 288, 293, 296 (2d Cir. 2004);

DeFelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d

61, 65-66 (2d Cir. 1997).  Where, as here, the plan

administrator does exercise discretionary authority, the

reviewing court should afford greater deference to the

administrator's exercise of such discretion.  See Firestone, 489

U.S. at 115 (denial of benefits under ERISA plan receives de

novo review unless plan gives administrator discretionary

authority to determine benefit eligibility or to construe plan

terms).  Where the plan administrator has discretionary

authority and review is more deferential, a lack of formal

criteria for appeal determinations must surely receive less

weight than when a plan administrator does not have such

discretion.  Even taking the alleged conflicts of interest into

account, the decision of the Appeals Committee was not

unreasonable.


**B.**

The plaintiff's brief focuses primarily on the alleged

conflicts of interest.  What the plaintiff does not do, however,

is explain why the decision of the Appeals Committee was

unreasonable.  The plaintiff takes issue with the investigative

tools relied on by the Appeals Committee—a Social Security

18

Administration Itemized Statement of Earnings and Dun & Bradstreet reports—but does not deny the underlying fact that Petri was employed by a Contributing Employer after he began receiving Early Retirement Pension benefits.

Section 8.06(d) of the Plan defines Disqualifying Employment before normal retirement age as including "employment with any Contributing Employer." (Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Stmt. ¶ 20.)  Sheet Metal Master was a Contributing Employer. (LeBlanc Decl. Ex. F.)  The Social Security Itemized Statement of Earnings for the plaintiff clearly show, and the plaintiff does not dispute, that he received earnings from Sheet Metal Master after his Early Retirement Pension benefits began, through 2005.  It was not unreasonable for the Appeals Committee to determine that this constituted Disqualifying Employment under the Plan.

Furthermore, it was not unreasonable for the Appeals Committee to conclude that the plaintiff's affiliation with John's Metal Works was also Disqualifying Employment. The plaintiff acknowledges that John's Metal Works was engaged in "the same type of work (residential roofing, siding, and alterations) as was Sheet Metal Master." (LeBlanc Decl. Ex. D, at SMWNPF-0004.)  The Sheet Metal Workers' Constitution clearly indicates that roofing is considered to be sheet metal work. (Defs.' 56.1 Stmt. ¶ 22; Pl.'s 56.1 Stmt. ¶ 22.)  The plaintiff

does not dispute that his Social Security Itemized Statement of Earnings shows that he received earning from John's Metal Works in 2005.  (LeBlanc Decl. Ex. D, at SMWNPF-0009.)  It was not unreasonable for the Appeals Committee to conclude that the plaintiff's affiliation with John's Metal Works similarly constituted Disqualifying Employment under the Plan.

Even considering any conflicts of interests, the decision of the Appeals Committee here was clearly reasonable.  Indeed, it appears close to unassailable.

**IV.**

The plaintiff seeks declaratory relief on the following issues: (1) whether the Plan may offset 100 percent of his benefits to recover the overpayment of benefits to the plaintiff, (2) whether the plaintiff's current work is Disqualifying Employment after Normal Retirement Age, and (3) whether the time to seek court review can properly be limited to 90 days.

**A.**

The letter notifying Petri of the Appeals Committee's determination provides that the "Fund will withhold future benefits until fully reimbursed" for the overpayments to the plaintiff.  (LeBlanc Decl. Ex. F, at SMWNPF-332.)  The plaintiff

seeks a declaratory judgment that the Fund may only offset his
future retirement benefits by a maximum of 25 percent each
month.  It would be premature for this Court to issue such
declaratory relief at this time.

First, the plaintiff cites Department of Labor regulations
interpreting ERISA § 203(a)(3) as support for his argument that
any offsets are limited to 25 percent of his monthly retirement
benefit.  See 29 U.S.C. § 1053; 29 C.F.R. § 2530.203-3(a).
However, these provisions relate to protection from forfeiture
of accrued benefits where a plan provides for the "suspension of
pension benefits upon employment."  29 C.F.R. § 2530.203-3.  In
this case, the Fund did not merely suspend the plaintiff's
benefits when he became reemployed.  Rather, the Fund found that
the plaintiff had never actually retired and was not properly on
early retirement and therefore should not have been paid his
retirement benefits.  Moreover, the Fund does not content that
the plaintiff has "forfeited" his benefits, only that they were
not properly paid because the plaintiff had not retired within
the meaning of the Plan.

The plaintiff's requests for declaratory relief are also
premature.  In a declaratory judgement action, the standard for
ripeness is "that there is a substantial controversy, between
parties having adverse legal interests, of sufficient immediacy
and reality to warrant the issuance of a declaratory judgment."

21

<u>Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 411 F.3d 384, 388 (2d Cir. 2005) (internal quotation marks omitted). That standard is not satisfied in this case.  The plaintiff reached Normal Retirement Age on March 27, 2007, and he only submitted an application for his standard retirement benefits on November 3, 2008.  That application is still pending.  It would be premature for this Court to decide what the proper deductions may be before the Fund has made that determination.  Presumably, the Fund will follow the law.  In any event, if the plaintiff believes the Fund's future determination regarding offsets is erroneous, he will have the opportunity to appeal that determination and return to this Court.

Similarly, the plaintiff seeks declaratory relief to determine whether his current employment is Disqualifying Employment after Normal Retirement Age.  As with the request for declaratory relief regarding offsets, this request is premature. The plaintiff is not presently receiving any retirement benefits, early or otherwise, that could be suspended if he engages in Disqualifying Employment.  Moreover, the plaintiff's application for retirement benefits was filed after this action was brought and is currently pending.  Thus, the issue of whether Petri's employment constitutes Disqualifying Employment after Normal Retirement Age is not ripe and declaratory relief is not warranted at this time.

**B.**

Finally, the plaintiff seeks to challenge the provision of the Appeals Committee determination that limits the plaintiff's time to seek review in this Court to 90 days.  The defendants argue that he lacks standing to challenge this provision because the plaintiff has not been injured in fact by the 90 day limitation.  The plaintiff responds that he was forced to submit his appeal without all of the documentation that he would have liked to provide.  Furthermore, the plaintiff alleges that he is likely to be harmed in the future by the 90 day limitation should his benefits ever be denied in the future.

The plaintiff's argument that he has standing to challenge the 90 day limit at this time assumes that he is likely to have his benefits denied again in the future.  Such an argument is necessarily speculative, and falls short of the "injury in fact" required for standing.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (standing requires injury in fact).  The plaintiff did in fact meet the 90 day deadline to file the present action, and has suffered no such injury in fact.  He points to no additional material or arguments that he could have submitted if he had more time.  Therefore, the plaintiff lacks standing to challenge the 90 day limitation.

## CONCLUSION

The defendants' motion for summary judgment is **granted**.

The Clerk is directed to close this case and to enter judgment

dismissing the complaint. The Clerk is also directed to close

Docket No. 21.

**SO ORDERED.**

**Dated:**     **New York, New York**
           **September 28, 2009**

John G. Koeltl
United States District Judge

24